## In re the GUARDIANSHIP OF Blake Evert NELSON, Ward.

### No. C5-95-2086.

Court of Appeals of Minnesota.

April 30, 1996.

---

J. Scott Braden, W. Bradley Frago, Faribault, for Guardian–Appellant.

Gregory Carlson, Faribault, for Ward–Respondent.

Considered and decided by AMUNDSON, P.J., TOUSSAINT, C.J., and WILLIS, J.

## OPINION

WILLIS, Judge.

Guardian appeals from the district court's order denying his petition for allocation of the social security income of his son.

## FACTS

Blake Evert Nelson (Blake) receives approximately $786 monthly in social security survivor benefits due to his mother's death. The Social Security Administration disburses the benefits to William G. Nelson (Nelson), Blake's father and legal guardian, as Blake's representative payee. Nelson petitioned the district court to allow him, as Blake's guardian and representative payee, to use Blake's social security benefits to pay for Blake's food, shelter, and clothing.[1]

The district court denied Nelson's petition, concluding that Nelson could use Blake's social security benefits only to pay for "a computer, recreational equipment and fees, per-

---

1. Nelson also petitioned the district court for allocation of Blake's monthly income of $1641 from his mother's Teacher's Retirement Association annuity. The district court also denied Nelson's petition regarding Blake's annuity income. Nelson does not appeal that portion of the district court's order.

sonal allowances, appropriate legal fees, and other purchases which may not be considered necessities." The district court relied on the following Minnesota statute regarding the duties of guardians:

> The duties and powers of a guardian * * * include, but are not limited to:
>
> (1) The duty to pay the reasonable charges for the support, maintenance, and education of the ward or conservatee in a manner suitable to the ward's or conservatee's station in life and the value of estate. *Nothing herein contained shall release parents from obligations imposed by law for the support, maintenance, and education of their children.* The guardian * * * has no duty to pay for these requirements out of personal funds. Wherever possible and appropriate, the guardian * * * should meet these requirements through governmental benefits or services to which the ward * * * is entitled, rather than from the ward's * * * estate.

Minn.Stat. § 525.56, subd. 4(1) (1994) (emphasis added). The district court interpreted the statute to require Nelson to pay for Blake's necessities without using Blake's social security benefits. The court reasoned that because Nelson is Blake's father, he is obligated to provide for Blake.

### ISSUE

Do federal social security regulations preempt state law that requires a representative payee parent to provide personally for the support, maintenance, and education of his or her child?

### ANALYSIS

■ Nelson argues that federal regulations preempt Minn.Stat. § 525.56, subd. 4(1) (1994), to the extent that the statute prevents Nelson from using Blake's social security survivor benefits for Blake's current maintenance needs. Whether federal law preempts state law is a question of statutory construction. *Pikop v. Burlington Northern R.R.,* 390 N.W.2d 743, 748 (Minn.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). Statutory construction is an issue of law reviewed de novo by this

court. *Sorenson v. St. Paul Ramsey Medical Ctr.,* 457 N.W.2d 188, 190 (Minn.1990).

■ Federal law may preempt state law in three situations: (1) when the federal law explicitly says that it preempts state law, (2) when Congress has occupied a field of regulation, and (3) when state law conflicts with federal law. *Pikop,* 390 N.W.2d at 748; *In re Revocation of Manufactured Home Dealer License MD1518 Issued to Toberman,* 527 N.W.2d 138, 140 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995). State law conflicts with federal law

> if compliance with both state and federal law is a physical impossibility * * *, or if state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Forster v. R.J. Reynolds Tobacco Co.,* 437 N.W.2d 655, 658 (Minn.1989) (quoting *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). Federal regulations preempt state law to the same extent as federal statutes. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

If a representative payee does not use payments in accordance with Social Security Administration regulations, the administration will select a new payee, 20 C.F.R. § 404.2050 (1994). A representative payee commits a felony if he or she "knowingly and willfully converts * * * a payment * * * to a use other than for the use and benefit of [the beneficiary]." 42 U.S.C. § 408(a)(5) (1994). The Social Security Administration considers payments to "have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance," which includes (1) costs of food, shelter, clothing, medical care, and personal comfort items and (2) costs of institutional care. 20 C.F.R. §§ 404.2040(a)(1), (b) (1994). If payments exceed the costs of the beneficiary's current maintenance needs, a payee may use a beneficiary's payments for (1) support of the beneficiary's legal dependents or (2) debts of the beneficiary that arose before payments began. 20 C.F.R. §§ 404.2040(c), (d). After the representative payee has used the payments to satisfy the requirements of

20 C.F.R. § 404.2040, "any remaining amount shall be conserved or invested on behalf of the beneficiary." 20 C.F.R. § 404.2045(a) (1994). Federal regulations do not authorize a representative payee to use survivor benefits for any other purpose.

 The district court's order prohibiting Nelson from applying Blake's social security benefits to Blake's current maintenance needs directly conflicts with federal law; compliance with both the court's order and federal law is impossible. Further, the district court's order prevents accomplishment of Congress's goal in establishing social security disability and survivor benefits: to replace income that would otherwise be available from a disabled or deceased parent for the beneficiary's current maintenance. *See Jahnke v. Jahnke*, 526 N.W.2d 159, 164 (Iowa 1994) (discussing Congress's goal); *Catlett v. Catlett*, 55 Ohio App.3d 1, 561 N.E.2d 948, 953 (1988) (same). Because social security survivor benefits replace a deceased parent's income, they "are not a windfall" to the beneficiary. *Jahnke*, 526 N.W.2d at 164. The availability of such benefits to pay a child's current maintenance costs also is not a windfall to a surviving parent, because the benefits replace a deceased parent's income that would otherwise be available for that purpose. *Id.* We hold that federal law preempts Minn.Stat. § 525.56, subd. 4(1), to the extent that the statute prevents representative payee parents from using their children's social security survivor benefits for the children's current maintenance.

Our conclusion comports with decisions of other jurisdictions. In *Cunningham v. Toan,* the Eighth Circuit Court of Appeals held that

> [a] state policy which removes from the representative payee the determination of when a beneficiary's maintenance needs have been met, as well as the determination of what use of any surplus would be in the beneficiary's best interest, is clearly inconsistent with [the representative payee's] discretion.

728 F.2d 1101, 1104 (8th Cir.1984), *vacated on other grounds,* 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 912 (1985). In *Jahnke,* the Iowa Supreme Court held that a court order

prohibiting a representative payee parent from using a beneficiary's social security benefits for the beneficiary's current needs conflicted with federal law. 526 N.W.2d at 164. Finally, in *Mellies v. Mellies,* the district court concluded that a parent representative payee had an obligation to support his child and, therefore, could not use the child's social security benefits unless the parent's funds were insufficient to support the child. 249 Kan. 28, 815 P.2d 114, 116 (1991). The Kansas Supreme Court reversed, concluding that

> the district court's judgment herein was predicated upon a misinterpretation of [the father's] duty of parental support in relation to his role as representative payee of [the child's] social security benefits. [The father] had no obligation to exhaust his personal finances in providing for [the child's] support before spending any of [the child's] social security benefits on the child's maintenance. So long as appropriate expenditures for the child's support exceeded the social security benefits received, there were no funds to be conserved for [the child].

*Id.,* 815 P.2d at 117.

In reaching its conclusion that Nelson could not spend Blake's social security benefits for his basic necessities because "those expenses are to be borne by [Nelson]," the district court here cited two Minnesota cases, *In re Conservatorship of T.L.R.,* 375 N.W.2d 54 (Minn.App.1985) and *In re Conservatorship of Moore,* 409 N.W.2d 14 (Minn.App. 1987). Neither *T.L.R.* nor *Moore* supports the district court's conclusion.

In *T.L.R.,* three children received insurance payments and monthly veterans administration and social security benefits after their father's death. 375 N.W.2d at 55. The children's mother was appointed conservator of the children's estates, and she used the children's insurance funds and their veterans and social security benefits for family expenses over a 15–month period. *Id.* at 56. Although expenditure of the children's government benefits was not challenged on appeal, this court stated that the mother

> properly applied certain "property" of the children toward their support: the month-

ly Veterans and Social Security benefits. [Minn.Stat. § 525.56, subd. 4] * * * contemplate[s] that these monthly benefits be used to support the children.

*Id.* at 57–58. The court held that the children's mother could not use the children's insurance funds without court approval, but reasoned that the mother "had the Veterans and Social Security funds available to meet the children's needs." *Id.* at 58.

In *Moore,* three children received insurance proceeds and monthly social security survivor benefits following their mother's death. 409 N.W.2d at 15. The children's father was appointed as the children's conservator, and he spent the children's social security survivor benefits and insurance proceeds to support his entire family of seven, rather than only the three conservatees. *Id.* This court reversed the district court's allowance of the expenditures, holding that the father could not "demonstrate that the insurance proceeds were disbursed *solely* on the conservatees' behalf." *Id.* at 17. With regard to social security survivor benefits, the court stated:

> Where a parent/conservator has sufficient resources to support his children, the government payments *for the children's future use* would be saved for their later benefit. When resources are not sufficient, government payments may be used to supplement or replace a parent's inadequate income to provide for the conservatees. Even where social security benefits are used for the children's necessities, the conservator must still account for the expenditures. Although there was no meaningful account of this resource by Moore, we do not find reversible error where the parent was unemployed.

*Id.* (emphasis added).

The court in *Moore,* however, did not consider the preemption issue raised by Nelson in this appeal. Federal regulations provide that social security survivor payments are for a beneficiary's current maintenance, not for a beneficiary's future use, unless the payments exceed the costs of current maintenance. *See* 20 C.F.R. § 404.2040. We recognize that parents have a duty to provide for their children's needs. *See* Minn.Stat. § 260.221,

subd. 1(b)(2) (stating that failure to provide for a child's needs may be a ground to terminate parental rights). Preemption principles, however, lead us to conclude that a representative payee parent can use his or her child's social security survivor benefits for the child's current maintenance regardless of the parent's financial ability to meet those needs.

## DECISION

Because federal regulations require representative payees to use social security survivor benefits for the beneficiary's current maintenance, the district court erred by prohibiting Nelson from using Blake's social security survivor benefits for Blake's food, shelter, and clothing.

**Reversed.**